UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 1:15-CR-124-HSM-CHS |
| ) | |
| BILLY RAY WILSON ) | |

REPORT and RECOMMENDATION

I. Introduction

Defendant Billy Ray Wilson, who has been charged in a four count indictment with various federal drug and gun crimes, moves to suppress evidence seized on his person and at his residence on or about October 21, 2015, by officers of the Chattanooga, Tennessee Police Department (CPD). As grounds for the motion to suppress, Defendant contends that the affidavit used to obtain the search warrant for his residence failed to support probable cause to search, and further, that there was no constitutional basis to search his person during the execution of the search warrant. For the reasons stated herein, it is RECOMMENDED that Defendant's motion to suppress be DENIED.

II. Facts

An evidentiary hearing was held on Defendant's motion to suppress evidence on November 21, 2016. Det. Jason Duggan with the Chattanooga Police Department (CPD) was the sole witness at the hearing, and I found him to be credible. He testified as follows:

Det. Duggan was the officer in charge of the investigation leading to the search warrant for Defendant's residence. At the time the warrant was executed, Det. Duggan had been working as a detective in CPD's narcotics division for one and a half years. Prior to obtaining a search warrant for Defendant's residence, Det. Duggan worked with a confidential informant (CI). Det.

1

Duggan used this informant to conduct two controlled buys of methamphetamine at Defendant's residence. This CI also had been in the residence at other times and observed a person identified as "Bubba" in possession and control of methamphetamine. Based on his personal observations, the CI reported to Det. Duggan that Bubba carried a firearm and conducted drug transactions in the backyard of the residence. During the 72 hours prior to obtaining the search warrant, Det. Duggan conducted surveillance of the residence during which he never saw anyone enter or exit the residence from the front entrance. However, he did observe short term visitors enter and exit the backyard of the residence by picking up and moving to the side a section of the privacy fence surrounding the backyard. When the privacy fence was removed to allow someone to enter or exit, Det. Duggan could see a tent in the backyard. Det. Duggan also personally observed Defendant several times during his surveillance and recognized Defendant as the individual identified by the CI as "Bubba" based on the CI's description of Bubba as a tall, thin, white man with a burr haircut. Det. Duggan was unable to obtain Bubba's real name prior to the execution of the search warrant.

The affidavit used to obtain the search warrant for Defendant's residence was prepared and sworn to by Det. Duggan on October 20, 2015. The affidavit provides in relevant part:

> 2. That on October 12, 2015 your affiant received information from a confidential informant.
>
> 3. The said informant advised me that within the last 72 hours said informant was on the premises of the potential defendant in this case, John Doe alias "Bubba", who is a tall, thin build W/M with a burr haircut, who resides in or occupies and is in possession of the following described premises, to wit: 4304 12th Ave, this is a brown house with a front porch that has two large shrubs one on each side of the sidewalk. The numbers 4304 are displayed on the front of the house, Chattanooga, Hamilton County, Tennessee. See attached photo herein and incorporated into this search warrant affidavit. While there said informant saw legend and/or narcotic drugs including crystal methamphetamine, the same being on said premises in the possession of and control of said John Doe alias "Bubba".

4. The said informant further advised your affiant that "Bubba" is dealing crystal methamphetamine and marijuana from the above described location.

5. The said informant further advised your affiant that there is a large amount of short term traffic at the above described location.

6. Your affiant was able to corroborate some of the information provided by the said informant. This affiant has conducted surveillance on the said location at which time observing the short term traffic. This traffic is consistent with known drug houses in the area.

7. The said informant has made at least two "controlled buys" from the above said address for your affiant, with one of these buys occurring within the last 72 hours from October 20, 2015. The following controls were in place: Under the direction and control of your affiant, the said informant was physically checked or searched by your affiant for any type of contraband, your affiant found none on the informant who was visually monitored entering the premises. The informant conducted the hand to hand drug transaction, specifically money for crystal methamphetamine. Your affiant then observed the informant leave the said premises. Your affiant, close in time thereafter personally retrieved from the informant crystal methamphetamine purchased by the informant and suspected to be crystal methamphetamine. Your affiant personally inspected the crystal methamphetamine and found it to match in color, texture, shape, and odor the controlled substance known as crystal methamphetamine. Your affiant followed appropriate procedures or safeguards which ensured that the currency supplied to the informant prior to the purchase was spent as directed, and your affiant again physically checked or searched the informant and found no other contraband on the informant. This purchase was made by the informant, the informant made no stops or had no contact with any individuals before handing the crystal methamphetamine to your affiant.

8. Your affiant has known the said informant for approx. 3 months.

9. The said informant has provided your affiant information on one occasion in the past that have lead [sic] to the arrests of individuals in violation of narcotics laws, this includes marijuana.

[Affidavit, Doc. 32-1].

Based on Det. Duggan's affidavit, a state court judge in Hamilton County, Tennessee issued a search warrant on October 20, 2015 to search Defendant's residence, "the premise located at 4304 12th Ave" [sic] and "all persons, containers, outbuildings and motor vehicles found within the curtilage, for the said John Doe alias, 'Bubba.' This is a tall, thin build W/M with burr

3

haircut, for evidence of crystal methamphetamine…" [Search Warrant at p.1, Doc. 32-1]. On October 21, 2015, immediately before executing the search warrant, Det. Duggan met with the raid team from CPD to brief them about the search operation. In addition to giving the team details about the investigation and the impending search, Det. Duggan also briefed the team on potential safety hazards including that Defendant carried a firearm on his person. Det. Duggan further testified at the evidentiary hearing that, in his experience, drug traffickers commonly possess and use firearms to protect themselves and their businesses from other dealers and police.

On October 21, 2015, Det. Duggan and the raid team executed the search warrant at Defendant's residence. They arrived at the privacy fence around the backyard and announced "police, search warrant." Receiving no response, the offices removed the section from the privacy fence and entered the backyard. Officers found Defendant and another person, Amber Pemberton, in a tent in the yard. Det. Duggan testified he immediately recognized Defendant as the man he observed during his surveillance and identified by his CI as "Bubba." Defendant was standing on one side of the cluttered tent in a leather jacket and Pemberton was sitting on a cot. Officers conducted a pat down of Defendant for their safety and discovered a firearm in Defendant's jacket pocket. Det. Duggan testified that within one minute of discovering the firearm, Defendant was "placed into custody," taken from the backyard and walked to Defendant's vehicle in the driveway where Defendant was asked for his name and his criminal history. Defendant said his name was Billy Wilson, confirmed that he was also called Bubba, and stated he has prior felony convictions. Det. Duggan then gave Defendant his *Miranda* warnings. Subsequently, officers searched Defendant more thoroughly and discovered a baggie of methamphetamine in one of his pockets.

4

Defendant's mother was the only person on the premises other than Defendant and Pemberton. Officers also conducted a pat-down for officer safety of Defendant's mother and Pemberton. After securing the premises, police conducted a more thorough search and found another firearm on the tent floor, a baggie of methamphetamine stored in a refrigerator in the tent, and digital scales in the house. Finally, Det. Duggan testified at the evidentiary hearing that every time he has brought a suspect to the Hamilton County jail to be booked for a drug charge, that suspect has been subjected to a search including a body cavity search by jail personnel.

### III. Discussion

#### A. The Search of Defendant's Residence

Defendant contends the affidavit at issue is insufficient to set forth probable cause to search his residence because it "contains almost no specific information." According to Defendant, the affidavit fails constitutional muster because it does not specify when the first controlled buy took place; there is no recording of the controlled buys; the controlled buys are not linked to Defendant, only to his residence; and the affidavit does not indicate how long Det. Duggan had observed short term traffic and whether that traffic occurred at the Defendant's residence or nearby houses in the neighborhood.

The Fourth Amendment provides no warrant shall issue but upon probable cause, supported by oath or affirmation ...." U.S. Const. amend IV. To establish probable cause to justify a search warrant, an affidavit must set forth facts which indicate "a fair probability exists that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal citations omitted); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005). The Court must consider the totality of the circumstances as set out in the four corners of the affidavit. *Illinois v. Gates*, 462 U.S. 213, 230

5

(1983) (totality of the circumstances standard); *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971) (Court limited to review of affidavit itself). The court reviewing a search warrant affidavit is to avoid a "grudging or negative attitude" toward a warrant or a "hypertechnical critique" of a warrant and accord the magistrate's determination of probable cause "great deference." *Allen,* 211 F.3d at 973.

Where an affidavit relies upon hearsay information from a confidential informant to supply probable cause, "a court must consider the veracity, reliability, and the basis of knowledge of that information as part of the totality of the circumstances for evaluating the impact of the information." *Frazier*, 423 F.3d at 532 (quoting *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)). Independent police corroboration of a confidential informant's story is not required to support probable cause unless the affidavit lacks indicia of the informant's reliability, in which case "courts insist that the affidavit contain substantial independent police corroboration." *Frazier*, 423 F.3d at 532; *United States v. Crumpton*, 824 F.3d 593, 616 (6th Cir. June 2, 2016) ("At the same time, independent corroboration of the tip by police is not required when the court is provided assurances that the informant is reliable. In such cases, the affiant need only attest with some detail that the informant provided reliable information in the past.") (internal citations omitted); *United States v. Thomas*, 605 F.3d 300, 307 and 308 n. 5 (6th Cir. 2010) ("when an affidavit indicates the reliability of the informant, the tip *on its own* can be sufficient to support probable cause.") (emphasis original). Moreover, "Sixth Circuit precedent clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable." *United States v. Greene,* 250 F.3d 471, 480 (6th Cir. 2001).

In the instant case, Det. Duggan stated he had known the informant for three months and

6

Case 1:15-cr-00124-HSM-CHS   Document 42   Filed 12/05/16   Page 6 of 10   PageID #: 233

the informant had provided reliable information leading to the arrest of individuals for a marijuana offense. Thus the reliability of the informant was established. The informant told Det. Duggan that he saw Bubba in possession and control of methamphetamine and marijuana on the premises and there was "a large amount of short term traffic" at the residence [Affidavit, ¶5; Doc. 32-1]. The affidavit also contains corroboration of the CI's information. The affidavit describes the Defendant's residence in paragraph three. In paragraph six, the affidavit states that Det. Duggan has "conducted surveillance on the said location at which time observing the short term traffic" which is "consistent with known drug houses in the area" [*Id.* ¶ ¶3, 5, 6]. In addition, while the affidavit does not specify exactly when the first controlled buy took place, it necessarily occurred within the past three months since Det. Duggan had only known the informant for three months. The second controlled buy Det. Duggan conducted with the informant occurred within the 72-hour period before obtaining the search warrant [*Id.* at ¶ ¶ 7-8]. As part of the controlled buy, Det. Duggan checked the informant for drugs and found none, watched him go into the residence, watched him exit the residence, and then checked him again finding methamphetamine. [*Id.* at ¶ 7].

As previously stated, Defendant asserts the affidavit lacks certain specific information. However, an "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen,* 211 F.3d 970, 975 (6th Cir. 2000) (en banc). The affidavit provided reliable information that the residence at issue was being used to conduct ongoing, illegal drug trafficking and that there was a fair probability that evidence of the trafficking would be found in the residence. Considering the totality of the circumstances as presented in the affidavit, I conclude the affidavit contains probable cause to issue a search warrant for Defendant's residence and the curtilage of his residence.

7

2. The Search of the Defendant's Person

It is well settled that, if police have a search warrant based on probable cause to search a residence for contraband, the search warrant implicitly carries with it the limited authority to detain the occupants while the search is being conducted. *Michigan v. Summers*, 452 U.S. 692, 704 (1981), *see also United States v. Binford*, 818 F.3d 261, 267-68 (6th Cir. 2016) (police had authority to detain the occupant of the residence while it was being searched pursuant to *Summers*). Moreover, police may briefly detain a person to conduct an investigation if police have a reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot. *Terry v. Ohio,* 392 U.S. 1, 18-23 (1968); *Binford*, 818 F.3d at 268. Consequently, under *Summers,* Det. Duggan had a constitutional basis to detain Defendant when Det. Duggan entered the tent to begin execution of the search warrant. Moreover, based on the information Det. Duggan received from the CI, from the controlled buys, and from his own surveillance, Det. Duggan also had reasonable suspicion to believe Defendant was involved in criminal activity. Therefore, Det. Duggan could briefly detain Defendant for investigative purposes as well. *Binford*, 818 F.3d at 268 ("because the two controlled purchases of marijuana gave [police] reasonable suspicion of criminal activity, [the police] also had the authority to subject [defendant] Binford to a brief investigatory detention").

Finally, it is equally well-settled that, during an investigatory detention, an officer may "conduct a carefully limited search of the outer clothing...in an attempt to discover weapons" if the officer has reasonable suspicion, based on specific and articulable facts, that the suspect is armed and dangerous. *Terry*, 392 U.S. at 30; *see also United States v. Walker*, 181 F.3d 774, 778 (6th Cir. 1999). In the instant case, Det. Duggan had information from the CI that Bubba, whom Det. Duggan recognized from the CI's description and from Det. Duggan's own surveillance as

the man standing in the tent, carried a firearm on him while conducting his drug trafficking business. Further, Det. Duggan knew from his experience investigating drug crimes that drug traffickers frequently carry firearms to protect themselves from other dealers and the police. Consequently, I conclude Det. Duggan had a constitutional basis to frisk Defendant for a weapon. *See United States v. Young*, 277 F. App'x, 587, 589–90 (6th Cir. 2008) (finding the officer's reasonable suspicion that the suspect was attempting to sell drugs sufficient to justify the frisk of the suspect); *United States v. Heath*, 259 F.3d 522, 528 (6th Cir.2001) (finding it reasonable for officers to draw their weapons, order the suspect out of his car, and frisk the suspect based upon the officers' reasonable suspicion that the suspect was engaged in drug trafficking.)

Once the firearm was found on Defendant's person, Det. Duggan had probable cause to conclude Defendant possessed a firearm in furtherance of a drug crime in violation of 18 U.S.C. § 924(c), and Det. Duggan could conduct a search incident to arrest without violating the Fourth Amendment. *Chimel v. California*, 395 U.S. 752, 762-63 (1969) (police may lawfully search a person for weapons and evidence immediately following that person's arrest); *Riley v. California*, __ U.S. __, 134 S.Ct. 2473, 2483 (2014) (same). Further, after Defendant told Duggan he had prior felony convictions, Det. Duggan had probable cause to arrest Defendant as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Under either scenario, Det. Duggan could then conduct a more complete search of Defendant incident to arrest. The subsequent search in which police found the baggie of methamphetamine on Defendant was found during a search incident to arrest and does not provide grounds for suppression.

## IV. Conclusion

For the reasons stated herein, it is RECOMMENDED Defendant's motion to suppress evidence found at his residence and on his person on October 21, 2015 be DENIED.[1]

**ENTER.**

s\ *Christopher H. Steger*
CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified constitutes a waiver of the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).