UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 1:15-cr-124 |
| v. | ) | |
| | ) | Judge Mattice |
| BILLY RAY WILSON, | ) | Magistrate Judge Steger |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## ORDER

On December 5, 2016, United States Magistrate Judge Christopher Steger filed his Report and Recommendation (Doc. 42) pursuant 28 U.S.C. § 636(b)(1), in which he recommends that the Motion to Suppress (Doc. 29) filed by Defendant Billy Ray Wilson be denied. The Court has now reviewed the entire record relevant to the instant objections, and for the reasons described below, the Court will **ACCEPT** and **ADOPT IN PART** Magistrate Steger's Report and Recommendation and will **DENY** Defendant's Motion to Suppress.

### I. STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the Report and Recommendation to which an objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C).

### II. FACTS

On or about October 21, 2015, police officers with the Chattanooga Police Department executed a search warrant at the Defendant's residence. Officers discovered

multiple firearms as well as methamphetamine on the premises and on Defendant's person, and the items were seized. On November 24, 2015, Defendant was indicted for several federal drug and firearm crimes. (Doc. 1). On July 12, 2016, Defendant filed a Motion to Suppress, arguing that the affidavit used to obtain the search warrant for his residence failed to provide probable cause, and that there was no constitutional basis to search his person during the execution of the search warrant. (Doc. 29). The motion was referred to Magistrate Judge Steger the next day. (Doc. 30). An evidentiary hearing was held before Magistrate Judge Steger on November 21, 2016. Detective Jason Duggan with the Chattanooga Police Department (CPD) was the only witness.

Defendant objects to the Magistrate Judge's recitation of the facts, but does not indicate which portions are inaccurate.[1] For that reason, and for ease of reference, the Court will recount the pertinent facts surrounding the warrant and search as summarized by Magistrate Judge Steger:

> Det. Duggan was the officer in charge of the investigation leading to the search warrant for Defendant's residence. At the time the warrant was executed, Det. Duggan had been working as a detective in CPD's narcotics division for one and a half years. Prior to obtaining a search warrant for Defendant's residence, Det. Duggan worked with a confidential informant (CI). Det. Duggan used this informant to conduct two controlled buys of methamphetamine at Defendant's residence. This CI also had been in the residence at other times and observed a person identified as "Bubba" in possession and control of methamphetamine. Based on his personal observations, the CI reported to Det. Duggan that Bubba carried a firearm and conducted drug transactions in the backyard

---

[1] Defendant contends: "The Magistrate Judge's factual summary [Doc. 42, pp. 1-5] contains at least 13 findings which stem directly from Detective Duggan's testimony, not from the affidavit itself." (Doc. 43 at 4). Thus, it seems that Defendant's objections to the Magistrate Judge's facts concern their relevance as opposed to their veracity. While information outside the affidavit may indeed be objectionable when considering whether the warrant was supported by probable cause, as will be discussed more fully below, the Court finds no harm in outlining such information here. If nothing else, it provides context for Defendant's arguments.

2

of the residence. During the 72 hours prior to obtaining the search warrant, Det. Duggan conducted surveillance of the residence during which he never saw anyone enter or exit the residence from the front entrance. However, he did observe short term visitors enter and exit the backyard of the residence by picking up and moving to the side a section of the privacy fence surrounding the backyard. When the privacy fence was removed to allow someone to enter or exit, Det. Duggan could see a tent in the backyard. Det. Duggan also personally observed Defendant several times during his surveillance and recognized Defendant as the individual identified by the CI as "Bubba" based on the CI's description of Bubba as a tall, thin, white man with a burr haircut. Det. Duggan was unable to obtain Bubba's real name prior to the execution of the search warrant.

The affidavit used to obtain the search warrant for Defendant's residence was prepared and sworn to by Det. Duggan on October 20, 2015. The affidavit provides in relevant part:

2. That on October 12, 2015 your affiant received information from a confidential informant.

3. The said informant advised me that within the last 72 hours said informant was on the premises of the potential defendant in this case, John Doe alias "Bubba", who is a tall, thin build W/M with a burr haircut, who resides in or occupies and is in possession of the following described premises, to wit: 4304 12th Ave, this is a brown house with a front porch that has two large shrubs one on each side of the sidewalk. The numbers 4304 are displayed on the front of the house, Chattanooga, Hamilton County, Tennessee. See attached photo herein and incorporated into this search warrant affidavit. While there said informant saw legend and/or narcotic drugs including crystal methamphetamine, the same being on said premises in the possession of and control of said John Doe alias "Bubba".

4. The said informant further advised your affiant that "Bubba" is dealing crystal methamphetamine and marijuana from the above described location.

5. The said informant further advised your affiant that there is a large amount of short term traffic at the above described location.

6. Your affiant was able to corroborate some of the information

3

provided by the said informant. This affiant has conducted surveillance on the said location at which time observing the short term traffic. This traffic is consistent with known drug houses in the area.

7. The said informant has made at least two "controlled buys" from the above said address for your affiant, with one of these buys occurring within the last 72 hours from October 20, 2015. The following controls were in place: Under the direction and control of your affiant, the said informant was physically checked or searched by your affiant for any type of contraband, your affiant found none on the informant who was visually monitored entering the premises. The informant conducted the hand to hand drug transaction, specifically money for crystal methamphetamine. Your affiant then observed the informant leave the said premises. Your affiant, close in time thereafter personally retrieved from the informant crystal methamphetamine purchased by the informant and suspected to be crystal methamphetamine. Your affiant personally inspected the crystal methamphetamine and found it to match in color, texture, shape, and odor the controlled substance known as crystal methamphetamine. Your affiant followed appropriate procedures or safeguards which ensured that the currency supplied to the informant prior to the purchase was spent as directed, and your affiant again physically checked or searched the informant and found no other contraband on the informant. This purchase was made by the informant, the informant made no stops or had no contact with any individuals before handing the crystal methamphetamine to your affiant.

8. Your affiant has known the said informant for approx. 3 months.

9. The said informant has provided your affiant information on one occasion in the past that have lead [sic] to the arrests of individuals in violation of narcotics laws, this includes marijuana.

[Affidavit, Doc. 32-1].

Based on Det. Duggan's affidavit, a state court judge in Hamilton County, Tennessee issued a search warrant on October 20, 2015 to search Defendant's residence, "the premise located at 4304 12th Ave" [sic] and "all persons, containers, outbuildings and motor vehicles found within the curtilage, for the said John Doe alias, 'Bubba.' This is a tall, thin build W/M with burr haircut, for evidence of crystal methamphetamine..." [Search Warrant at p.1, Doc. 32-1]. On October 21, 2015, immediately before executing the search warrant, Det. Duggan met with the raid team from CPD to brief them about the search operation. In addition to giving the team details about the investigation

4

and the impending search, Det. Duggan also briefed the team on potential safety hazards including that Defendant carried a firearm on his person. Det. Duggan further testified at the evidentiary hearing that, in his experience, drug traffickers commonly possess and use firearms to protect themselves and their businesses from other dealers and police.

On October 21, 2015, Det. Duggan and the raid team executed the search warrant at Defendant's residence. They arrived at the privacy fence around the backyard and announced "police, search warrant." Receiving no response, the offices removed the section from the privacy fence and entered the backyard. Officers found Defendant and another person, Amber Pemberton, in a tent in the yard. Det. Duggan testified he immediately recognized Defendant as the man he observed during his surveillance and identified by his CI as "Bubba." Defendant was standing on one side of the cluttered tent in a leather jacket and Pemberton was sitting on a cot. Officers conducted a pat down of Defendant for their safety and discovered a firearm in Defendant's jacket pocket. Det. Duggan testified that within one minute of discovering the firearm, Defendant was "placed into custody," taken from the backyard and walked to Defendant's vehicle in the driveway where Defendant was asked for his name and his criminal history. Defendant said his name was Billy Wilson, confirmed that he was also called Bubba, and stated he has prior felony convictions. Det. Duggan then gave Defendant his *Miranda* warnings. Subsequently, officers searched Defendant more thoroughly and discovered a baggie of methamphetamine in one of his pockets.

Defendant's mother was the only person on the premises other than Defendant and Pemberton. Officers also conducted a pat-down for officer safety of Defendant's mother and Pemberton. After securing the premises, police conducted a more thorough search and found another firearm on the tent floor, a baggie of methamphetamine stored in a refrigerator in the tent, and digital scales in the house. Finally, Det. Duggan testified at the evidentiary hearing that every time he has brought a suspect to the Hamilton County jail to be booked for a drug charge, that suspect has been subjected to a search including a body cavity search by jail personnel.

(Doc. 42 at 1-5).

Magistrate Judge Steger went on to recommend that the Motion to Suppress be denied for the following reasons:

In the instant case, Det. Duggan stated he had known the informant for three months and the informant had provided reliable information leading to the arrest of individuals for a marijuana offense. Thus the reliability of the informant was established. The informant told Det. Duggan that he saw Bubba in possession and control of methamphetamine and marijuana on the premises and there was "a large amount of short term traffic" at the residence [Affidavit, ¶5; Doc. 32-1]. The affidavit also contains corroboration of the CI's information. The affidavit describes the Defendant's residence in paragraph three. In paragraph six, the affidavit states that Det. Duggan has "conducted surveillance on the said location at which time observing the short term traffic" which is "consistent with known drug houses in the area" [*Id.* ¶ ¶3, 5, 6]. In addition, while the affidavit does not specify exactly when the first controlled buy took place, it necessarily occurred within the past three months since Det. Duggan had only known the informant for three months. The second controlled buy Det. Duggan conducted with the informant occurred within the 72-hour period before obtaining the search warrant [*Id.* at ¶ ¶ 7-8]. As part of the controlled buy, Det. Duggan checked the informant for drugs and found none, watched him go into the residence, watched him exit the residence, and then checked him again finding methamphetamine. [*Id.* at ¶ 7].

As previously stated, Defendant asserts the affidavit lacks certain specific information. However, an "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen,* 211 F.3d 970, 975 (6th Cir. 2000) (en banc). The affidavit provided reliable information that the residence at issue was being used to conduct ongoing, illegal drug trafficking and that there was a fair probability that evidence of the trafficking would be found in the residence. Considering the totality of the circumstances as presented in the affidavit, I conclude the affidavit contains probable cause to issue a search warrant for Defendant's residence and the curtilage of his residence. . . .

[In regard to the search of Defendant's person, it] is well settled that, if police have a search warrant based on probable cause to search a residence for contraband, the search warrant implicitly carries with it the limited authority to detain the occupants while the search is being conducted. *Michigan v. Summers*, 452 U.S. 692, 704 (1981) . . . . Moreover, police may briefly detain a person to conduct an investigation if police have a reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot. *Terry v. Ohio,* 392 U.S. 1, 18-23 (1968) . . . . Consequently, under *Summers,* Det. Duggan had a constitutional basis to detain Defendant when Det. Duggan entered the tent to begin execution of the search warrant. Moreover, based on the information Det. Duggan received from the CI, from the controlled buys, and from his own surveillance, Det. Duggan also had reasonable

suspicion to believe Defendant was involved in criminal activity. Therefore, Det. Duggan could briefly detain Defendant for investigative purposes as well . . . .

Finally, it is equally well-settled that, during an investigatory detention, an officer may "conduct a carefully limited search of the outer clothing...in an attempt to discover weapons" if the officer has reasonable suspicion, based on specific and articulable facts, that the suspect is armed and dangerous. *Terry*, 392 U.S. at 30; . . . . In the instant case, Det. Duggan had information from the CI that Bubba, whom Det. Duggan recognized from the CI's description and from Det. Duggan's own surveillance as the man standing in the tent, carried a firearm on him while conducting his drug trafficking business. Further, Det. Duggan knew from his experience investigating drug crimes that drug traffickers frequently carry firearms to protect themselves from other dealers and the police. Consequently, I conclude Det. Duggan had a constitutional basis to frisk Defendant for a weapon . . . .

Once the firearm was found on Defendant's person, Det. Duggan had probable cause to conclude Defendant possessed a firearm in furtherance of a drug crime in violation of 18 U.S.C. § 924(c), and Det. Duggan could conduct a search incident to arrest without violating the Fourth Amendment. *Chimel v. California*, 395 U.S. 752, 762-63 (1969) (police may lawfully search a person for weapons and evidence immediately following that person's arrest) . . . . Further, after Defendant told Duggan he had prior felony convictions, Det. Duggan had probable cause to arrest Defendant as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Under either scenario, Det. Duggan could then conduct a more complete search of Defendant incident to arrest. The subsequent search in which police found the baggie of methamphetamine on Defendant was found during a search incident to arrest and does not provide grounds for suppression.

(Doc. 42 at 5-9).

On December 19, 2016, Defendant filed timely objections to the Report and Recommendation. (Doc. 43). On January 10, 2017, the United States filed a Response.

(Doc. 45).[2] The Court having reviewed the parties' submissions finds that the issues are fully briefed and ready for disposition.

### III. ANALYSIS

#### A. Search of the Premises

The Fourth Amendment provides no warrant shall issue but upon probable cause, supported by oath or affirmation ...." U.S. Const. amend IV. To establish probable cause to justify a search warrant, an affidavit must set forth facts which indicate "a fair probability exists that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal citations omitted); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005). The Court must consider the totality of the circumstances as set out in the four corners of the affidavit. *Illinois v. Gates*, 462 U.S. 213, 230 (1983).

Where an affidavit relies upon hearsay information from a confidential informant to supply probable cause, "a court must consider the veracity, reliability, and the basis of knowledge of that information as part of the totality of the circumstances for evaluating the impact of the information." *Frazier*, 423 F.3d at 532 (quoting *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)). "[I]ndependent corroboration of the tip by the police is not required when the court is provided with

---

[2] The Response was filed twenty-two days after Defendant's objections. Defendant has not raised the issue of timeliness, however, and nothing in the government's response disturbs the outcome of the analysis set forth below.

8

assurances that the informant is reliable." *United States v. Crumpton,* 824 F.3d 593, 616 (6th Cir. 2016). "[T]he affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable." *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001).

Defendant argues Magistrate Judge Steger erred in relying upon information not found in Detective Duggan's affidavit when considering the sufficiency of the warrant. Specifically, Defendant states that Magistrate Steger improperly referenced the following facts in his analysis:

> (1) that the confidential informant (CI) had been at 4304 12th Avenue at "other times" than the two alleged purchases detailed in the Affidavit and had observed a person identified as "Bubba" in possession and control of methamphetamine (p. 2);
>
> (2) that the CI had personally observed "Bubba" to carry a firearm (p. 2);
>
> (3) that the CI had specifically observed "Bubba" conduct drug transactions in the back yard of 4304 12th Avenue, as opposed to inside the residence itself (p .2);
>
> (4) that Detective Duggan had conducted personal surveillance of 4304 12th Avenue during the 72 hours prior to obtaining the search warrant and had never seen anyone enter or exit the residence from the front entrance (p. 2);
>
> (5) that Detective Duggan had personally observed short term visitors enter and exit the backyard of the residence by picking up and moving to the side a section of the privacy fence surrounding the backyard (p. 2); and
>
> (6) that Detective Duggan personally observed a tent in the backyard of the residence while the section of privacy fence was moved (p .2).

(Doc. 43 at 4 n.2).

In this case, Defendant is correct that the Magistrate Judge should not have relied upon testimony supplied by Detective Duggan at the evidentiary hearing in

deciding whether the sworn affidavit itself provided probable cause for the warrant. *See, e.g., United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) ("In reviewing the sufficiency of the evidence supporting probable cause, [courts] are limited to examining the information contained within the four corners of the affidavit."). Nevertheless, Defendant's challenge fails, as the Report and Recommendation clearly cites other information contained within the affidavit sufficient to support a finding of probable cause.

As stated in Magistrate Steger's Report and Recommendation, Detective Duggan declares in the affidavit that he had known the informant for three months, and that the informant had provided reliable information in the past leading to successful drug prosecutions, including arrests for marijuana. (Docs. 32-1 at 3; 42 at 6-7). According to well-settled Sixth Circuit precedent, these sworn declarations establish the reliability of the informant. *See, e.g., Crumpton,* 824 F.3d at 616; *Greene*, 250 F.3d at 480. The informant told Duggan that he witnessed a "tall, thin build W/M with a burr haircut" known as "Bubba" possess and deal both crystal methamphetamine and marijuana from his residence on 4304 12th Avenue in Chattanooga, Tennessee. The informant also stated that "there is a large amount of short term traffic" at this premises. (Docs. 32-1 at 2; 42 at 7). The Sixth Circuit have held warrants to be supported by probable cause on similar bases. *See Allen*, 211 F.3d at 976 ("We hold that where a known person . . . to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate may believe that evidence of a crime will be found.").

10

The affidavit goes on, however, to provide independent corroboration of the informant's tip. First, Detective Duggan observed the residence in question and witnessed for himself the short term traffic, which he opined was consistent with other known drug houses in the area. (Docs. 32-1 at 2; 42 at 7). Second, Detective Duggan's supervision of two controlled purchases of crystal methamphetamine, one of which occurred within 72 hours of the warrant's issuance, further corroborates the informant's story. The process by which Duggan supervised the controlled purchase – by first checking the informant for drugs, observing the informant enter and exit the residence, and then finding methamphetamine – has specifically been upheld by the Sixth Circuit as satisfactory corroborating information. *See Crumpton*, 824 F.3d at 616 (holding that probable cause supported a search warrant where investigator "searched the informant immediately before the purchase . . . watched the informant enter and exit the house," and thereafter found narcotics on the informant); *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006).

Defendant also appears to challenge the affidavit for its lack of information regarding the curtilage of Defendant's residence, which is where the police entered the premises and where the bulk of the incriminating evidence against Defendant was found. The warrant at issue here clearly authorized the search of outbuildings and other structures located in the curtilage of Defendant's residence. (Doc. 32-1 at 5). While not expressly mentioned in the Report and Recommendation, Detective Duggan's affidavit does contain some information concerning possible locations for storing or hiding illegal substances other than Defendant's house:

11

> It has also been my training and experience that users of and traffickers in controlled substances, when hiding or transporting controlled substances or case, commonly conceal them in several separate "stashes," often in several rooms of a building, outbuilding, several vehicles, and in public or common areas which can be kept under their observation.

(Doc. 32-1 at 1).

Further, the affidavit appears to indicate that illegal activity was occurring on the premises as a whole -- there is no suggestion that the possession or sale of controlled substances was confined to Defendant's house. In this regard, Defendant appears to be suggesting distinctions and exclusions within the affidavit when, in reality, there are none. As set forth above, the Court must examine the warrant and its supporting affidavit in their totality. *Gates*, 462 U.S. at 230. Considering Detective Duggan's statements regarding outbuildings in conjunction with the informant's tip about the premises as a whole, the magistrate was not remiss for authorizing the search of the curtilage as well as Defendant's house in the warrant.

Finally, Defendant contends that the information in the affidavit is insufficient because it does not specify the date of the first controlled buy, the controlled buys were not recorded, and controlled buys were not linked to the Defendant specifically. Defendant further contends that Detective Duggan's corroboration of the informant's tip was inadequate in a number of respects; namely, the affidavit fails to indicate how long Duggan observed short term traffic and whether Duggan made any attempt to verify the identity of "Bubba" or his connection to the premises. As correctly noted by the Magistrate Judge, "an affidavit is judged on the adequacy of what it does contain, not what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at

975. Based on information that was provided in the affidavit, which included information from a reliable informant that a specific residence was used to conduct drug trafficking, as well as independent corroboration of this information, there was at least a fair probability that evidence of drug trafficking would be found at Defendant's residence. Accordingly, the warrant was supported by probable cause, and Defendant's Motion to Suppress must be **DENIED** on these grounds.

### B.   Search of Defendant's Person

Defendant also argues that the subsequent search of his person, which led to the discovery of a firearm and a baggie of methamphetamine, was likewise unsupported by Detective Duggan's affidavit. He contends that Magistrate Judge Steger once again looked beyond the information contained in the affidavit in concluding the search and warrant were valid. Defendant points to the follow information in particular:

(1) Detective Duggan briefing the raid team that the Defendant carried a firearm on his person (p.4)

(2) Detective Duggan's belief that persons involved in drug offenses commonly possess and carry firearms (p. 4);

(3) Detective Duggan's claim that he immediately recognized the Defendant as the "Bubba" described by the CI (p.4);

(4) that officers believed it necessary to pat down the Defendant for their safety, at which time a firearm was discovered in his pocket (p.4);

(5) that the Defendant, while in custody and prior to Miranda warning, confirmed his identity as "Bubba" and stated that he had prior felony convictions (p. 4); and

(6) that every time Detective Duggan has brought a suspect to the Hamilton County Jail on a drug charge, that individual has been subjected to a full search (including body cavities) (p. 5).

13

(*Id.* at 4-5 n. 3).

As outlined above, Magistrate Judge Steger found that the search of Defendant's person was lawful under various exceptions to the warrant requirement, and did not address whether the warrant's supporting affidavit provided probable cause. (Docs. 32-1 at 5; 38 at 1). Therefore, Defendant's arguments regarding the information the affidavit lacks are of little consequence. Defendant does not attack the Magistrate Judge's findings regarding the applicability of the exceptions to the warrant requirement as set forth in *Michigan v. Summers*, 452 U.S. 692 (1981), *Terry v. Ohio*, 391 U.S. 1 (1968), and *Chimel v. California*, 395 U.S. 752 (1969), and the undersigned finds no cause to disturb those findings here. The Court, however, finds an additional ground for denying Defendant's Motion to Suppress that is readily discernable from the record.

The doctrine of inevitable discovery is a well-settled exception to the exclusionary rule. As stated by the Sixth Circuit:

> [The exception] allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means.

*United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)). "[T]he inevitable discovery exception to the exclusionary rule applies when the government can demonstrate *either* the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence *or* other compelling facts establishing that the disputed evidence inevitably would have been discovered." *Id.* at 499 (emphasis in original). "The exception requires the district court to determine, viewing affairs as they existed at the instant before the unlawful

14

search, what would have happened had the unlawful search never occurred." *United States v. Eng*, 971 F.2d 854, 861 (2d Cir. 1992).

In the present case, it is uncontested that shortly after finding a firearm and drugs on the Defendant's person, law enforcement discovered another firearm and more drugs in the backyard tent. The government contends that the uncovering of the second firearm pursuant to a valid warrant would have prompted the search of Defendant's person, if not his outright arrest, and thus, the firearm and methamphetamine would have been discovered in any event. (Doc. 38 at 2-3). The Defendant asserts that the initial search of the property was invalid, rendering any subsequent investigation or discoveries tainted, and further argues that the government's position is based on conjecture and speculation. (Docs. 38 at 2-3; 39 at 5). As set forth above, this Court has found the search of Defendant's residence to be valid and supported by probable cause. Accordingly, the Court will only address Defendant's latter argument.

The Sixth Circuit was presented with a similar issue in *United States v. Vite-Espinoza*, where individuals not named in a valid warrant were detained and frisked when they approached the premises being searched. The frisk of one individual yielded the discovery of a firearm. Shortly thereafter, another firearm was found nearby. The Sixth Circuit held:

> [W]e note that the police discovered a handgun on the ground, near the defendants and their vehicles . . . . [I]t [cannot] be argued that the officers, had they not searched the defendants, would have missed the handgun in plain view. Once having discovered the dropped handgun, the officers would most certainly have been justified in searching everybody present, lest there be another handgun. Hence, even had the circumstances prior to the search been insufficient to justify the search, a discovery soon

15

thereafter would have allowed and caused a search of the defendants, which inevitably would have discovered [the individual's] gun.

*United States v. Vite-Espinoza*, 342 F.3d 462, 469 (6th Cir. 2003).

The underlying facts in *Vite-Espinoza* are markedly similar to those presented here. The record reflects that investigators lawfully entered the curtilage of Defendant's residence pursuant to the terms of the search warrant and discovered the tent pitched there. Within the tent, law enforcement encountered the Defendant, frisked him, and found a firearm and methamphetamine. Soon thereafter, law enforcement uncovered another firearm on the tent floor. (Doc. 42 at 4-5). As was the case in *Vite-Espinoza*, law enforcement would have been justified in searching everyone present at the scene for additional weapons and the firearm on Defendant's person would have been inevitably discovered. Accordingly, even if the search of Defendant's person was somehow found to be unlawful, the corresponding evidence would nonetheless be admissible.[3] The Motion to Suppress will be **DENIED**.

## IV. CONCLUSION

For the reason stated herein, Defendant's Objections are **OVERRRULED IN PART**. The Court **ACCEPTS** and **ADOPTS IN PART** Magistrate Judge Steger's Report and Recommendation (Doc. 42) pursuant to 28 U.S.C. § 6363(b)(1)(C), and Defendant's Motion to Suppress (Doc. 29) is **DENIED**.

---

[3] Again, although this issue was not analyzed by the Magistrate Judge, the facts supporting such a conclusion were clearly articulated in the Report and Recommendation, and the parties presented respective arguments on the matter in their initial briefing of the Motion to Suppress. (Docs. 38, 39).

16

**SO ORDERED** this 26th day of January, 2017.

                                             */s/ Harry S. Mattice, Jr.*
                                             HARRY S. MATTICE, JR.
                                             UNITED STATES DISTRICT JUDGE